# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2940-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

C.V.,

     Defendant-Appellant,

and

P.D. and R.H.,

     Defendants.

_____

IN THE MATTER OF K.D.,

     a Minor.

_____

     Argued March 5, 2019 – Decided March 20, 2019

     Before Judges Fisher and Geiger.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FN-11-0139-17.

Amy E. Vasquez, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Amy E. Vasquez, on the brief).

John W. Tolleris, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; John W. Tolleris, on the brief).

Meredith A. Pollock, Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith A. Pollock, of counsel; Charles Ouslander, Designated Counsel, on the brief).

PER CURIAM

Defendant C.V. appeals a finding in this Title Nine action that she abused or neglected her eleven-year-old child by leaving him in their West Windsor apartment for an undue period of time without adult supervision. In appealing, defendant argues:

> I. THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF ABUSE OR NEGLECT UNDER N.J.S.A. 9:6-8.21(c)(4)(b).
>
> II. EVEN IF IT IS DETERMINED THAT THE EVIDENCE RELIED UPON AT TRIAL WAS COMPETENT AND SUFFICIENTLY CORROBORA-TIVE, THE MOTHER'S ACTIONS

2

DO NOT RISE TO THE LEVEL OF TITLE [NINE] ABUSE AND NEGLECT.

III.  N.J.S.A. 9:6-8.21(c)(4)(b) IS UNENFORCEABLE IN THE CONTEXT OF THIS CASE AS IT IS UNCONSTITUTIONALLY VAGUE FOR THE AVERAGE CITIZEN TO UNDERSTAND AND [DEFENDANT] WAS WITHOUT FAIR NOTICE (Not Raised Below).

We find insufficient merit in these arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only a few brief comments about Points I and II.

At a one-day fact-finding hearing, the judge heard from only one witness, a Division representative who conducted an investigation and gathered evidence about the circumstances that led to the commencement of this action.  Defendant was present at the hearing but did not testify.

The Division representative testified that police were called to investigate the child's absence from school the morning of Tuesday, May 30, 2017.  Police arrived at defendant's apartment around noon to find the child home alone.  He said he overslept and missed the bus, and that he had been home alone for days and was frightened.[1]

---

[1]  The judge found from the evidence that the child said he was fearful "at night . . . when people would walk [by] the door of his apartment, . . .

Defendant responded to the police officer's phone call and later explained the child was mistaken about her absence. She claimed she had been home each night that weekend and the child's misperception resulted from her late night arrivals and early morning departures while the child was sleeping. Defendant did not testify and thus passed on the opportunity to amplify or illuminate her earlier statements, which represented the only evidence that conflicted with the Division's claim that the child was left alone for days.

The Division – recognizing the need for more than the child's uncorroborated out-of-court statement about the alleged abuse or neglect, see N.J.S.A. 9:6-8.46(a)(4) (declaring that a child's statement "shall be admissible in evidence" but "no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect") – provided corroboration through a police report, which incorporated information about the location of defendant's mobile phone on the weekend in question. We recognize the police report did not entirely support the child's statement that defendant was absent the entire weekend. For example, those records revealed that defendant's phone arrived in the West Windsor area shortly after midnight and remained there until 11:09

---

caus[ing] the door to shake." The judge also determined the child had no telephone contact with defendant, had "no emergency contact person," and had "no place to go to should there be an emergent situation."

a.m., Sunday, May 27. But, about ninety minutes later, the phone was in the Bronx, and a little more than an hour after that in Connecticut. The records further revealed that in the afternoon of Monday, May 29, the phone was in Massachusetts, just north of Connecticut, and later in Boston when police reached defendant by phone on Tuesday, May 30, the day the child was found home alone. Defendant was still, when contacted, hours from the West Windsor area. This evidence not only corroborated the child's statement about being left alone but also independently establishes defendant's absence.

Although a judge's fact findings are deserving of appellate deference when supported by evidence, N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008); Cesare v. Cesare, 154 N.J. 394, 411-12 (1998), there were no real factual disputes to be resolved here. Indeed, most if not all of the relevant facts are contained in the memorialized statements of the child and defendant and the information contained in the police report. Despite what defendant would have the court believe, the information about the location of defendant's mobile phone[2] clearly demonstrates defendant was not in New Jersey for approximately

---

[2] There is no dispute she was in possession of the mobile phone when it was outside this State because she answered it when police sought her out on Tuesday, May 30.

forty-eight uninterrupted hours.[3] That circumstance, in the words of N.J.S.A. 9:6-8.21(c)(4)(b), constitutes abuse or neglect; the child's "physical, mental, or emotional condition" was "impaired" or was "in imminent danger of becoming impaired" because defendant failed "to exercise a minimum degree of care" by failing to provide the child "with proper supervision."

What constitutes a "minimum degree of care" has been the subject of much litigation and our jurisprudence has created a "continuum" of conduct against which any given circumstance may be compared. N.J. Dep't of Children & Families v. T.B., 207 N.J. 294, 309 (2011). The Supreme Court has determined that the failure to exercise a minimum degree of care extends to circumstances when the parent "is aware of the dangers inherent in a situation[4] and fails

---

[3] Defendant argues this information was inadmissible. We disagree. The police report itself is evidentiary by statute. N.J.S.A. 9:6-8.46(a)(3). And, while the admission of the police report does not render its contents admissible, defendant did not object at the hearing to those parts of the police report that contain the reporting officer's summary of what the phone records revealed.

[4] This was not the first time defendant left the child home alone for an undue length of time, as there was evidence that, in January 2017, defendant left this child and a younger child alone; the children managed to lock themselves out of the apartment and, after the Division intervened and arrived, it took defendant two-and-one-half hours to return. This event demonstrates defendant was aware of the inherent risks, and defendant acknowledged on the later occasion that she made a mistake in judgment.

adequately to supervise the child or recklessly creates a risk of serious injury to the child." G.S. v. Dep't of Human Servs., 157 N.J. 161, 181 (1999). In essence, a parent or guardian is held to what "an ordinary reasonable person would understand" when considering whether the situation posed a risk and whether the parent or guardian nevertheless acted "without regard for the potentially serious consequences." Id. at 179.

Our courts have already blazed a trail as to what constitutes a minimum degree of care in similar circumstances. Prior decisions reveal the importance of the child's age and the duration of the lack of adult supervision. Although reversed because we attempted to draw a brightline, it is understood that the period of time an infant may be left unattended in a motor vehicle is brief indeed. See N.J. Dep't of Children & Families v. E.D.-O., 434 N.J. Super. 154, 160-62 (App. Div. 2014), rev'd, 223 N.J. 166 (2015). We have also found neglect when a school bus driver left a five-year old unattended on a bus for nearly an hour in ninety-five degree heat, N.J. Dep't of Children & Families v. R.R., 436 N.J. Super. 53, 59-60 (App. Div. 2014), and when a parent left a ten-month old child with an older child on a twin bed without rails near a hot radiator, N.J. Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538, 545-46 (App. Div. 2011). On the other hand, a parent was found not to have fallen short of the statutory

requirement when allowing her five- and three-year old children to return to their unoccupied home while she waited in a park within sight of the home. N.J. Dep't of Youth & Family Servs. v. J.L., 410 N.J. Super. 159, 161-62 (App. Div. 2009). And in a case bearing some similarities to J.L., the Supreme Court found that leaving a sleeping four-year-old child home alone for two hours – when the parent assumed the child's grandparents were present in their adjoining residence – did not fall short of the statutory minimum standard of care and supervision. T.B., 207 N.J. at 306-07. The unsupervised children in T.B., and J.L., however, were not found neglected because of the near absence of the parent's culpability, a critical circumstance because the statute prescribes "conduct that is grossly or wantonly negligent," not innocent mistakes. G.S., 157 N.J. at 178; see also T.B., 207 N.J. at 300. There is no evidence that defendant's absence resulted from an innocent mistake as in T.B.; she has made no such argument here, and the evidence bespeaks that her absence was deliberate.

As suggested by our existing jurisprudence – and by common sense – the intensity of supervision required by N.J.S.A. 9:6-8.21(c)(b)(4) lessens as a child ages. If the children in A.R. and R.R. were the age of the child here, the outcome would likely have been different. But, even though defendant's child was much

older than those children, the length of time he was left alone was markedly greater.

Context matters. See T.B., 207 N.J. at 309 (recognizing that a "parent's conduct must be evaluated in context based on the risks posed by the situation"). Each case requires not only consideration of the child's age and the amount of time left unsupervised, but also the child's environment. The judge found from the evidence that "the environment" in which the child was left was not conducive to the amount of time he was left alone. The judge found that during the extended weekend there was an absence of "appropriate cleaning or disposal of trash, garbage, and the . . . sink [was] overflowing with dirty dishes, [there was a] full garbage bag, [and the] odor of decaying garbage."

Appreciating that the law does not wait for harm to actually occur before intervening, see E.D.-O., 223 N.J. at 178, we find no error in the judge's determination that the child was abused or neglected by being left unsupervised. The phone records summarized in the police report demonstrate the mother's absence from the State for at least forty-eight straight hours. While we are aware of no case that defines how long a child that age might be left alone before constituting abuse or neglect, we have no hesitancy in concluding that intentionally leaving an eleven-year-old child home alone for forty-eight hours

in the environment described in the judge's findings, falls short of the statutory minimum degree of care. We are satisfied that the confluence of circumstances – the child's age, the duration of the lack of adult supervision, the child's immediate environment, and the absence of telephonic communication, see n.1, above – support the judge's conclusion that the child was abused or neglected within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2940-17T4